**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UniCredit Bank Austria AG, | No. CV-23-01991-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Inmobiliaria y Arrendadora Cuadro S.A. de C.V., et al., | |
| Defendantss. | |

      Plaintiff UniCredit Bank Austria AG provided Defendant Inmobiliaria y Arrendadora Cuadro S.A. de C.V ("IyAC") with a multi-million-dollar dual tranche loan to purchase plastic manufacturing equipment. UniCredit denied IyAC's request for the second tranche after IyAC failed to make payments on the first, resulting in IyAC's default on multiple other agreements contingent on IyAC securing financing. IyAC initiated arbitration against UniCredit, but the arbitrator ruled against IyAC and awarded damages to UniCredit. In this suit, UniCredit attempts to confirm the arbitration award against IyAC and asserts claims against other entities and individuals allegedly involved with IyAC. Some of UniCredit's claims, against some of defendants, are sufficient to proceed beyond the pleading stage, so defendants' motions to dismiss are denied in part.

## I.    Background

      IyAC is a family-run plastic film manufacturing company operated by Amalia Cecilia Luna Contreras ("Luna Contreras") and her son Miguel Angel Peredo Luna ("Peredo Luna"). (Doc. 29 at 2, 4.) IyAC is a Mexican company with assets and operations

in Arizona. (Doc. 29 at 2.)

In 2016, IyAC started negotiating a loan (the "Credit Agreement") with UniCredit, an Austrian bank. (Doc. 29 at 1, 7.) Under the Credit Agreement, UniCredit would make two loans available to IyAC: one in the amount of €3,351,600 ("Facility A") and another in the amount of €3,145,500 ("Facility B"). (Doc. 29 at 11.) This financing would be used to purchase plastic extrusion equipment from SML Maschinenbaugesellschaft mbH ("SML"). (Doc. 29 at 4, 7.) The equipment would be delivered to Zummit, a Nevada corporation that Luna Contreras and Peredo Luna represented was IyAC's "100%-owned subsidiary." (Doc. 29 at 6–8.) The Credit Agreement provided any dispute "arising out of or in connection" with the transaction would be subject to arbitration by Austria's Vienna International Arbitral Centre under its Rules of Arbitration and Conciliation. (Doc. 29 at 15.)

## A.    Material Misrepresentations

UniCredit alleges that IyAC, Zummit, and Peredo Luna made false statements and omissions during negotiations that were intended to induce UniCredit to enter into the Credit Agreement. (Doc. 29 at 8–10.) Many of the false statements and omissions involved the relationship between various organizations. For example, "IyAC, Zummit and Mr. Peredo Luna each provided [UniCredit] with entity organization charts showing, among other things, IyAC to have a 100% ownership interest in Zummit." (Doc. 29 at 8.) Luna Contreras signed "all but one of these entity organization charts[.]" (Doc. 29 at 8.) One of the charts provided by Peredo Luna and signed by Luna Contreras displayed "Inmobiliaria y Arrendadora **Grupo**, Mexico" (IyAG) as the "100%" owner of Zummit. (Doc. 29 at 8–9 (emphasis added).) Other documents identified IyAC, *i.e.* Inmobiliaria y Arrendadora **Cuadro**, as the owner. UniCredit asked Peredo Luna about this discrepancy and he stated, IyAG "is 'like our dba (Comercial [sic] name).'" (Doc. 29 at 9.) UniCredit later discovered that "Zummit's annual filings with the State of Arizona for 2017, 2018 and 2019 state that 'Fruma Plastics' was Zummit's shareholder." (Doc. 29 at 9.)

IyAC and Peredo Luna also provided UniCredit with IyAC's 2015, 2016, and 2017

audited financial statements. (Doc. 29 at 10.) These statements too "were for 'Inmobiliaria y Arrendadora Grupo' but per Mr. Peredo Luna's assertion, and as confirmed by the auditor who prepared the statements, this was understood by [UniCredit] to be a dba for, and refer to, IyAC." (Doc. 29 at 10.) UniCredit alleges these statements were materially false because they failed to disclose two pending litigation claims against IyAC, including one reduced to judgment in 2017. (Doc. 29 at 10.) IyAC also represented there were "no security interests on its assets" when its real estate was in fact subject to two large mortgages. (Doc. 29 at 10.) UniCredit relied on the statements and entered into the Credit Agreement. (Doc. 29 at 3.)

**B.    The Joint Venture Agreement**

Shortly before entering the Credit Agreement, IyAC and Zummit entered into a Joint Venture Agreement (the "JVA") with one another. (Doc. 29 at 12.) Peredo Luna signed on Zummit's behalf and another individual acting on Peredo Luna's instructions signed on IyAC's behalf. (Doc. 29 at 12.) Under the JVA, IyAC would "contribute the SML Equipment" to the joint venture and Zummit would "obtain a real estate facility in Arizona for the SML Equipment." (Doc. 29 at 12.) The parties agreed Zummit would receive 70% of the venture's profits and IyAC would receive 30%. (Doc. 29 at 12.) The JVA provided that in the event of a breach—which it did not define—the breaching party would pay the other party a $5 million penalty. (Doc. 29 at 12.) The JVA also contained a strange provision requiring that IyAC collaterally assign to Zummit 1,000,000 shares in Zummit as a form of security if IyAC breached the JVA. (Doc. 29 at 12.) "Zummit's Articles of Incorporation authorized the issuance of 1,000,000 shares, and therefore, the collateral pledge was for 100% of Zummit." (Doc. 29 at 12.) In other words, if IyAC breached the JVA, Zummit could execute on the collateral and own 100% of itself. (Doc. 29 at 12.)

In November 2019, approximately two years after the Credit Agreement, Zummit issued IyAC a default letter for "fail[ure] to provide evidence" of acquiring the SML Equipment under the JVA. (Doc. 29 at 13.) That letter demanded the $5 million penalty and notified IyAC that Zummit would "'keep possession and ownership of the shares title

- 3 -

certificate pledged since the joint venture contract was signed . . .' (*i.e.*, the 1,000,000 shares of Zummit pledged to Zummit by IyAC)." (Doc. 29 at 13.)

### C.    Private Purchase Agreement

After the Credit Agreement but before Zummit sent the default letter, IyAC entered into a Private Purchase Agreement (the "PPA") with Empaques Poliplasticos S.A. de C.V. ("Empaques"). (Doc. 29 at 13.) Under the PPA, IyAC would sell and Empaques would buy "30 million pounds of plastic wrap per year at a price of $1 per pound for five years, beginning in 2021." (Doc. 29 at 13.) In the event of a breach—a term the PPA did not define—the breaching party would pay a penalty of $30 million. (Doc. 29 at 13–14.) UniCredit was not aware of the PPA until IyAC filed its arbitration claim. (Doc. 29 at 13.)

### D.    Facility A Default and Arbitration

After UniCredit disbursed the Facility A loan to IyAC, the SML Equipment was delivered to Zummit. (Doc. 29 at 14.) IyAC failed to timely make the first installment payment due under the Credit Agreement. (Doc. 29 at 14.) Nonetheless, IyAC requested Facility B funding and provided 2017 and 2018 financial statements to UniCredit as required under the Credit Agreement. (Doc. 29 at 14.) These statements "omitted any reference to IyAC's debt to [UniCredit] of approximately €3,351,600" and "IyAC and its auditor could not provide a credible explanation for this omission." (Doc. 29 at 14.) Because of this and IyAC's attempts to "change what SML Equipment it could purchase under Facility B," UniCredit advised IyAC it would not make the Facility B loan available. (Doc. 29 at 14–15.)

Because UniCredit refused to make the Facility B loan, IyAC claimed it could not fulfill its obligations to Empaques under the PPA. (Doc. 29 at 14.) Empaques then issued a default letter stating IyAC had breached the PPA and demanding payment of the $30 million penalty. (Doc. 29 at 14.)

As a result, IyAC filed a statement of claim with the Vienna Arbitral Center claiming UniCredit breached the Credit Agreement and demanding €41,858,900.00 in damages. (Doc. 29 at 16.) UniCredit asserted a counterclaim for €3,037,823.24 plus

interest, representing the amounts IyAC had failed to pay under the Credit Agreement. (Doc. 29 at 16.)

On March 8, 2021, the arbitrator issued a final award in favor of UniCredit dismissing IyAC's claims and determining that IyAC was "liable to pay the amount of €3,075,192.72 to Plaintiff within 14 days after service of the award" with interest and €890,161.08 "for fees, expenses and costs related to the arbitration." (Doc. 29 at 17.)

### E.     IyAC Vacates its Facility

UniCredit brought an action against IyAC in Mexico. (Doc. 29 at 18.) On June 16, 2021, UniCredit's Mexican counsel attempted to effect service of process on IyAC at its facility in Mexico but discovered that IyAC had vacated it, "leaving no equipment and no forwarding address." (Doc. 29 at 18.) UniCredit alleges that discovery was the first time it had reason to think IyAC may have defrauded it. (Doc. 29 at 18.)

UniCredit subsequently investigated Peredo Luna and his associated entities and discovered "a long history of defrauding creditors using a similar 'shell game' *modus operandi*" that he used against UniCredit. (Doc. 29 at 18.) Peredo Luna "arranges for entities of which he has de facto control" to acquire plastic-making equipment and material, financed by loans; defaults on those loans after maxing out credit lines on the purchases; sends or transfers the purchased assets to another entity under his control; and then goes out of existence, "leaving no assets out of which the creditors can recover." (Doc. 29 at 18.) UniCredit alleges Peredo Luna followed a similar pattern of conduct with at least three other banks, with entities he controlled either disappearing or transferring their assets before filing for bankruptcy when the banks sought to collect. (Doc. 29 at 19–21.)

### F.     UniCredit Files Suit

In September 2023, UniCredit filed its complaint in this court against IyAC, Zummit, Peredo Luna, Maria de Los Angeles Luna Gale ("Luna Gale"), Luna Contreras, and Miguel A. Peredo ("Peredo").[1] (Doc. 1.) The complaint listed six counts. Two months

---

[1] The complaint names as defendants the spouses of Luna Contreras (Peredo) and Peredo Luna (Luna Gale). UniCredit does not allege any specific facts relating to those spouses except for the existence of their marriages. (Doc. 29 at 2.) The marital community "is not a legal entity and cannot itself be sued." *Sw. Foodservice Excellence Inc. v. Strub*, No. CV-

later, UniCredit filed an amended complaint alleging additional facts in support of these claims. (Doc. 29.) UniCredit was unable to serve IyAC, Luna Contreras, and Peredo through normal means and sought permission to complete alternative service. (Doc. 36.) The court approved alternative service and UniCredit served those three defendants via certified mail. (Doc. 40 at 4.) In December 2023, defendants Zummit, Peredo Luna, and Luna Gale filed a motion to dismiss. (Doc. 37.) In February 2024, Zummit notified the court it had filed for bankruptcy. (Doc. 52.) A few days later, Luna Contreras and Peredo filed a motion to dismiss. (Doc. 54.) IyAC filed its own motion to dismiss shortly after. (Doc. 55.)

Zummit's bankruptcy automatically stayed all counts against it. 11 U.S.C. § 362(a). Thus, assuming they are properly viewed as standalone counts, the counts brought only against Zummit (*i.e.*, counts three and five) are stayed. The bankruptcy stay did not, however, automatically reach any of the other defendants. *Klinkenborg Aerial Spraying & Seeding, Inc. v. Rotorcraft Dev. Corp.*, 690 F. App'x 540, 540–41 (9th Cir. 2017). The counts not subject to the bankruptcy stay are:

- Count 1: recognition of the Austrian arbitral award against IyAC (based on Zummit allegedly being IyAC's successor);

- Count II: fraud against IyAC, Zummit, Peredo Luna, and Luna Contreras for material misrepresentations and omissions during the parties' negotiations of the Credit Agreement;

- Count IV: piercing the corporate veil—alter ego against all defendants, based on IyAC being a "mere instrumentality" of Peredo Luna, Luna Contreras, and Zummit (Doc. 29 at 28);

- Count VI: fraudulent transfer under the Arizona Uniform Fraudulent Transfer Act

---

19-05063-PHX-SRB, 2020 WL 6323823 (D. Ariz. May 4, 2020). However, "[u]nder Arizona law, spouses must be sued jointly in order to reach assets of community property." *R. Prasad Indus. v. Flat Irons Env't'l. Sols. Corp.*, No. CV 12-8261-PCT-JAT, 2013 WL 2217831, at *5 (D. Ariz. May 20, 2013) (citing A.R.S. § 25–215(D); *Spudnuts, Inc. v. Lane*, 676 P.2d 669, 670 (Ariz. Ct. App. 1984). There are no substantive claims asserted against the spouses but "the Court understands that [the spouses are] named solely for purposes of collecting any potential judgment from the marital community." *Greenburg v. Wray*, No. CV-22-00122-PHX-DLR, 2022 WL 2176499, at *3 (D. Ariz. June 16, 2022).

against Peredo Luna, and Luna Contreras.

(Doc. 29 at 21–31.) This listing of the non-stayed counts is not entirely accurate. The Arizona Supreme Court recently clarified that "an attempt to pierce the corporate veil is not itself a cause of action but is raised in the context of another cause of action such as ones based on contract or tort." *Specialty Companies Grp., LLC v. Meritage Homes of Arizona, Inc.*, 492 P.3d 308, 310 (Ariz. 2021). Therefore, Count IV is not a standalone claim but merely an allegation that Peredo Luna, Luna Gale, Luna Contreras, Peredo, and Zummit should "be liable for the actions and debts of IyAC, including but not limited to the amounts owning [sic] under the Arbitration Award." (Doc. 29 at 29.)

## II.    Jurisdiction

Each of the three motions to dismiss presents a variety of jurisdictional arguments. There is "no mandatory sequencing of jurisdictional issues" and a court may assess jurisdictional issues in the order it deems reasonable. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). The court begins with challenges to service of process, then analyzes personal jurisdiction and finally subject matter jurisdiction.

### A.    Lack of Personal Jurisdiction due to Improper Service of Process

IyAC, Luna Contreras, and Peredo argue the complaint must be dismissed under Rule 12(b)(5) because UniCredit did not serve them properly. (Doc. 54 at 6–8; Doc. 55 at 4–5.) "A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (internal citation omitted). The serving party bears the burden of establishing the validity of service. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Because IyAC, Luna Contreras, and Peredo were properly served under Arizona law, their Rule 12(b)(5) motions are denied.

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Rule 4(e)(1) permits service by following state law "where the district court is located or where service is made[.]" Fed.

R. Civ. P. 4(e)(1). In Arizona, if a party shows that service by ordinary means is impracticable, the court may allow service by another manner. Ariz. R. Civ. P. 4.1(k)(1).

UniCredit attempted service on Luna Contreras, Peredo, and IyAC (through its 99% shareholder, Luna Contreras) by sending a process server to the Scottsdale address Luna Contreras identified as her own on the 2022 Annual Report that Zummit filed with the Arizona Corporation Commission. (Doc. 36 at 2.) The process server reported that the person who answered at this address stated, "no one [was] living here by that name" and "[m]ail has been received for them, but the Defendant is unknown." (Doc. 36 at 2.) UniCredit also identified a Paradise Valley address as Luna Contreras and Peredo's through a public records search and attempted to serve defendants there, but the person who answered at this address stated "Amalia does not live here, she lives with her husband . . . address unknown." (Doc. 36 at 2–3; Doc. 36-1 at 4.) UniCredit conducted another Arizona Corporation Commission search and discovered on September 19, 2023, two days before UniCredit filed the complaint, Zummit reported Luna Contreras's address and its own as one on North 48th Avenue in Phoenix. (Doc. 36 at 3.) But when a process server attempted service there less than a month later, an individual in the office reported "[t]here is no one here by this name" and "[s]ubject is not known." (Doc. 36-1 at 16.)

After unsuccessful attempts to serve IyAC, Luna Contreras, and Peredo in September and October 2023 and again in December 2023 after filing its amended complaint, UniCredit moved for alternative service arguing its "efforts were thwarted, likely intentionally." (Doc. 36 at 3–4; Doc. 36-1 at 4–5, 15–16.) The court granted that motion and allowed service by certified mail. (Doc. 40 at 2.)

### 1.    Luna Contreras and Peredo

Luna Contreras and Peredo argue they were improperly served because they are Mexican citizens and do not reside at any of the addresses where UniCredit attempted to serve them. (Doc. 54 at 7, 9.) They argue that as Mexican residents, they "cannot be served within Arizona." (Doc. 54 at 7, 9 (citing *In re Est. of Norman*, No. 1 CA-CV 22-0244, 2022 WL 17588231 (Ariz. Ct. App. Dec. 13, 2022)).) But unlike in *Norman*, public records

indicated that Luna Contreras and Peredo potentially resided at one of three Arizona addresses. *Cf. Norman*, 2022 WL 17588231, at *1, *4 (reversing superior court's grant of alternative service in Arizona where there was no evidence defendant resided in Arizona). And although Luna Contreras and Peredo provided affidavits with their motion to dismiss averring they are not residents of Arizona, Zummit's 2023 Annual Report filed with the Arizona Corporation Commission on September 19, 2023, listed a specific address for Luna Contreras on North 48th Avenue in Phoenix. (Doc. 36 at 3; Doc. 54-1 at 3.) Notably, Luna Contreras and Peredo never say they were not Arizona residents during the months UniCredit was attempting service, nor that they have never lived or resided at the Scottsdale and Paradise Valley addresses. (Doc. 54-1 at 3; Doc. 54-3 at 3.) Instead, they claim to *now* "live full time in Mexico," "visit" their family in Arizona twice per year, "stay in Arizona for approximately twenty days each visit," and not "have [any] other personal contacts with Arizona[.]" (Doc. 54-1 at 3; Doc. 54-3 at 3.) Their failure to say whether this was true during UniCredit's monthslong attempts at service is fatal to their argument.

Luna Contreras and Peredo also argue UniCredit should have attempted to serve them at their address in Mexico because it is identified on IyAC's filings with the Mexican commercial registry. (Doc. 54 at 7.) But Arizona Rule 4.1(k) authorizes alternative means of service within Arizona when ordinary means are "impracticable." Ariz. R. Civ. P. 4.1(k)(1). The impracticable standard "does not mean impossible, but rather that service would be extremely difficult or inconvenient." *Bank of N.Y. Mellon v. Dodev*, 433 P.3d 549, 558 (Ariz. Ct. App. 2018). Luna Contreras provides IyAC's filings with the Mexican commercial registry appearing to list her address from 2005 and 2020. (Doc. 54-2 at 14, 42.) But Luna Contreras and Peredo's affidavits avow that they currently reside at a different Mexican address and do not argue they ever lived at the address identified in IyAC's filings. (Doc. 54-1 at 3; Doc. 54-3 at 3.) UniCredit is not required to attempt service at every possible previous known address before seeking alternative service.

Alternative service "must be reasonably calculated under all the circumstances[] to apprise the interested parties of the pendency of the action and afford them an opportunity

1  to present their objections." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016–17

2  (9th Cir. 2002). UniCredit's certified mail service, authorized by this court's order, meets

3  this standard. (Doc. 40 at 3; Ariz. R. Civ. P. 4.1(k)(1).) Luna Contreras listed Zummit's

4  last known address as her own with the Arizona Corporation Commission just two days

5  before UniCredit filed its complaint. (Doc. 26 at 3.) It is reasonable to expect that Luna

6  Contreras and her husband could be served at that address when she publicly associated

7  herself with it mere months earlier. And indeed, Luna Contreras and Peredo have been

8  apprised of UniCredit's complaint and given the opportunity to respond, as evidenced by

9  their motion to dismiss and declarations. (Doc. 54, Doc. 54-1 at 3; Doc. 54-3 at 3.)

10                **2.    IyAC**

11         IyAC argues that the Hague Convention only allows UniCredit to serve it through

12  the Mexican Central Authority. (Doc. 55 at 5 (citing *Cardona v. Kreamer*, 235 P.3d 1026,

13  1029 (Ariz. 2010)).) UniCredit's failure to do so, IyAC alleges, renders its service

14  ineffective.

15         The Hague Convention does not apply when a defendant's address is not known.

16  *Cardona*, 235 P.3d. at 1028. UniCredit alleged in its complaint that its Mexican counsel

17  went to IyAC's address and found that it "had vacated its facility, leaving no forwarding

18  address." (Doc. 29 at 5.) IyAC's argument that UniCredit was required to first attempt

19  service through the Mexican Central Authority fails because here, too, Arizona Rule 4.1(k)

20  authorizes alternative means of service within Arizona when ordinary means are

21  "impracticable." Ariz. R. Civ. P. 4.1(k)(1).

22         Alternative service on IyAC was "reasonably calculated under all the circumstances,

23  to apprise the interested parties of the pendency of the action and afford them an

24  opportunity to present their objections." *Rio Props.*, 284 F.3d at 1016–17 (9th Cir. 2002).

25  UniCredit served IyAC by certified mail in accordance with Arizona Rule 4.1(k)(2) at an

26  address where its 99% shareholder and general manager held herself out as President and

27  as an agent for service of process for another business (and was her last known address).

28  (Doc. 40 at 3.) It is reasonable that IyAC would be apprised of this suit by serving it at the

same addresses where Luna Contreras was served. And IyAC has actually been apprised of this suit as demonstrated by its motion to dismiss. (Doc. 55.) Additional service would only cause unnecessary delay given Luna Contreras and IyAC's knowledge of this suit. *WAM USA Inc. v. Fierros*, No. CV-23-00448-PHX-ROS, 2023 WL 6690648, at *1 (D. Ariz. Oct. 12, 2023). Accordingly, Luna Contreras and IyAC's motions to dismiss for improper service are denied.

### B.    Personal Jurisdiction

IyAC, Luna Contreras, and Peredo moved to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). In opposing a defendant's motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that jurisdiction is proper. *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir. 2011). A plaintiff need only make a prima facie showing of jurisdictional facts where the motion is based on written materials and "uncontroverted allegations in the complaint must be taken as true," but a plaintiff cannot "simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004) (internal citations omitted). Although conflicts between statements contained in affidavits are resolved in the plaintiff's favor, "disputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020). IyAC's motion is denied and Luna Contreras and Peredo's motion is granted.

### 1.    IyAC

UniCredit argues the court has general and specific personal jurisdiction over IyAC because it has such jurisdiction over Zummit and Zummit is IyAC's alter ego. "[T]he alter ego test may be used to extend personal jurisdiction to a foreign parent *or* subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *Ranza v. Nike, Inc*., 793 F.3d 1059, 1073 (9th Cir. 2015). When the alter-ego test is satisfied, the court may impute an alter ego's contacts to the ostensibly separate entity. *Chorost v. Rotor Am. Inc*., No. CV-21-00235-TUC-RCC (LCK), 2022 WL 17361299, at *5 (D. Ariz. Aug.

8, 2022).

Analyzing first personal jurisdiction over Zummit, the court is permitted to exercise general jurisdiction over a nonresident if "the defendant's activities in the state are 'substantial' or 'continuous and systematic.'" *Est. of Studnek v. Ambassador of Glob. Missions UN Ltd.*, No. 04-0595-PHX-MHM, 2006 WL 3328595, at *2 (D. Ariz. Nov. 9, 2006), *aff'd sub nom. Est. of Studnek ex rel. Studnek v. Williams*, 312 F. App'x 18 (9th Cir. 2008). This presence can be shown by "mak[ing] sales, solicit[ing] or engag[ing] in business in the state, serv[ing] the state's markets, designat[ing] an agent for service of process, hold[ing] a license, or [being] incorporated there." *Monje v. Spin Master Inc*., No. CV-09-1713-PHX-GMS, 2013 WL 2390625, at *7 (D. Ariz. May 30, 2013).

Although Zummit is a "Nevada corporation," it is incorporated in Arizona.[2] (Doc. 29 at 3; Doc. 66-1 at 11.) It maintains an office in Arizona; is registered to do business in Arizona; designates a statutory agent with an Arizona address; reports all of its officers as having Arizona addresses; obtained a real estate facility in Arizona to fulfill the terms of the Joint Venture Agreement; intended to produce $30 million pounds of plastic in Arizona for IyAC to sell to Empaques; and planned to take 70% of the profit from the Arizona plastic manufacturing. (Doc. 29 at 12–13; Doc. 66-1 at 2, 4, 11.) These facts are sufficiently substantial to exercise general jurisdiction over Zummit and IyAC, assuming there are sufficient alter-ego allegations between the two.

A parent company can be held liable for the acts of its subsidiary if plaintiff shows (1) "unity of control" between parent and subsidiary and (2) that "observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff v. Great Republic Life Ins. Co*., 821 P.2d 725, 728 (Ariz. 1991). Unity of control can be demonstrated by "(1) under-capitalization; (2) failure to maintain a separate corporate identity; (3) diversion of corporate property for personal use; (4) lack of corporate formalities; and (5) failure to

---

[2] As with the other parties, Zummit's bankruptcy stay does not automatically extend to alter egos of the debtor. *Klinkenborg*, 690 F. App'x at 541. A bankruptcy court may choose to extend the stay to a debtor's alter ego only after "'hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate.'" *Id.* (quoting *Solidus Networks, Inc. v. Excel Innovations, Inc*., 502 F.3d 1086, 1096 (9th Cir. 2007).

maintain books and records of account in reasonable order." *In re Keesling*, No. 2-10-BK-00433-CGC, 2012 WL 5868883, at *2 (D. Ariz. Nov. 19, 2012). Arizona courts have also credited a showing of "stock ownership by the parent; common officers or directors; financing of subsidiary by the parent" and "payment of salaries and other expenses of subsidiary by the parent." *Gatecliff*, 821 P.2d at 728. Parties alleging alter-ego liability do not need to meet all of these factors. *Allen v. Am. Cap. Ltd*., 287 F. Supp. 3d 763, 809 (D. Ariz. 2017). Fraud can be found where "incorporation is for fraudulent purposes or where, after organization, the corporation is employed for fraudulent purposes." *Keesling*, 2012 WL 5868883, at *4.

UniCredit has alleged facts sufficient to plead a plausible basis to conclude IyAC and Zummit are alter egos. The amended complaint alleges that Zummit and IyAC commingle their assets because they operate the same plastic manufacturing business from the same location in Arizona using equipment IyAC purchased on Zummit's behalf. (Doc. 29 at 27.) IyAC is undercapitalized, having transferred "substantially all of its assets, business, and going concern value" to Zummit and "bec[oming] insolvent as a result." (Doc. 29 at 27, 31.) They similarly fail to maintain a separate corporate identity because Zummit "benefits from the skills, knowledge, workforce, market contacts, assets, and customer relationships of IyAC's ownership and management" and are both controlled by Peredo Luna (Zummit's Vice President of Operations, IyAC's General Manager, and holder of general power of attorney during the Credit Agreement negotiations), and Luna Contreras (Zummit's President and Director and IyAC's General Manager and controlling shareholder). (Doc. 29 at 2, 7, 27.)

UniCredit has also alleged sufficient facts to meet the fraud prong. "A fraud or injustice arises if observance of the corporate form would confuse the opposing parties and frustrate their efforts to protect their rights, while allowing the party responsible to evade liability." *Keg Restaurants Arizona, Inc. v. Jones*, 375 P.3d 1173, 1184 (Ariz. Ct. App. 2016). In particular, "a fraud may be perpetrated by the giving of a promise to perform a future act made with the present intention not to perform." *Id*. Here, UniCredit has alleged

facts showing that observance of the corporate form would allow the parties to evade liability. After UniCredit obtained the arbitration award, IyAC vacated its Mexico facility without leaving a forwarding address. (Doc. 29 at 5–6.) UniCredit later discovered IyAC and Zummit operated from the same location in Arizona. (Doc. 29 at 27.) And UniCredit alleged Peredo Luna "has a long history of defrauding creditors using a similar 'shell game[,]'" supporting its allegations with citations to three other similar transactions. (Doc. 29 at 18–21.) These facts are sufficient to meet the fraud prong. *Gatecliff*, 821 P.2d at 729 (holding fraud prong satisfied where plaintiff could not "protect their rights before suit" and defendant could "evade liability after suit").

The court has general jurisdiction over Zummit and there are sufficient alter-ego allegations to allow for Zummit's contacts to be attributed to IyAC.

### 2.    Luna Contreras and Peredo

UniCredit argues Luna Contreras and Peredo are subject to this court's general personal jurisdiction because they and Peredo Luna are also alter egos of IyAC and Zummit. (Doc. 66 at 7.) If there were sufficient factual allegations establishing an alter-ego relationship here, UniCredit would be correct. But between these parties, there are not.

Although UniCredit has met the second prong for the reasons described above, it has not shown—as it must—how "there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Keesling*, 2012 WL 5868883, at *2. UniCredit described how IyAC failed to observe corporate formalities, for instance, allowing Peredo Luna to enter the Credit Agreement on behalf of IyAC even without holding its power of attorney. (Doc. 29 at 7.) But UniCredit has not alleged facts supporting the other factors, such as intermingling or diversion of corporate property for personal use. *Keesling*, 2012 WL 5868883, at *2. UniCredit emphasizes that Peredo Luna and Luna Contreras were IyAC's controlling officers, but acting as a company's sole shareholders, officers, and directors is insufficient to find alter ego when the other factors have not been shown. *Honeywell, Inc. v. Arnold Const. Co.*, 654 P.2d 301, 307 (Ariz. Ct. App. 1982); *see also Marlyn Nutraceuticals, Inc. v. Improvita Health Prod.*, 663

F. Supp. 2d 841, 846 (D. Ariz. 2009) ("[C]orporate directors are not personally liable for torts committed by the corporation or by one of its officers merely by virtue of the office they hold."). And UniCredit alleges no facts even suggesting Peredo is IyAC's alter ego.

UniCredit also argues Luna Contreras and Peredo are subject to specific personal jurisdiction. The court applies the law of the state in which it sits when, as here, there is no applicable federal statute governing personal jurisdiction. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). Arizona law permits courts to exercise personal jurisdiction over a nonresident defendant to the maximum extent permitted under the due process clause of the United States Constitution. *Arizona Sch. Risk Retention Tr., Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 935 (D. Ariz. 2016). Exercise of jurisdiction over a non-resident comports with due process if that individual has "certain minimum contacts" with the relevant forum such that maintaining the suit "does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

To determine whether there are "minimum contacts," UniCredit must show, among other factors, that Luna Contreras and Peredo purposefully availed themselves of the privilege of doing business in the forum or purposefully directed their activities at the forum. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). The purposeful direction test in turn requires a defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* "'Intent' in the context of the 'intentional act' test refer[s] to an intent to perform an actual physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. And an "'act' denotes an external manifestation of the actor's will." *Id.*

UniCredit cites a number of allegations in support of its argument but few specifically relate to Luna Contreras and none relate to Peredo. (Doc. 66 at 10–11.) And even if Luna Contreras's alleged knowing misrepresentation that IyAC owned 100% of

Zummit and signature to that effect on the organization charts meets prong one's intentional act test, UniCredit fails to meet prong two. Specifically, UniCredit alleges Luna Contreras's actions were expressly aimed at Arizona because she acted to procure the SML Equipment for Zummit's use in Arizona and the effects of her actions were "felt" in Arizona. (Doc. 66 at 11.) But the cases UniCredit cites involve situations where the defendant's actions were expressly aimed at a plaintiff in the forum state where *the plaintiff* allegedly felt harm. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc*., 223 F.3d 1082 (9th Cir. 2000) (defendant's actions to defraud California plaintiff aimed at California); *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062 (9th Cir. 1990) (same). Here, "[a]ny economic harm suffered by [UniCredit] would have been suffered where [UniCredit] lives," *i.e*., in Austria. *See Al-Rajhi v. Mayfair Holdings, LLP*, No. 2:18-CV-0581-HRH, 2018 WL 3926439, at *4 (D. Ariz. Aug. 16, 2018).

UniCredit also argues Luna Contreras aimed her activities at Arizona to procure the SML Equipment as General Manager and controlling shareholder of IyAC and the President and Director of Zummit. But besides identifying her roles, UniCredit does not explain what actions Luna Contreras took. *Marlyn Nutraceuticals*, 663 F. Supp. 2d at 849 ("[A] person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person.").

Accordingly, the court does not have specific jurisdiction over Luna Contreras and Peredo as currently alleged. UniCredit asks the court for jurisdictional discovery over these defendants. (Doc. 66 at 18.) "[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Here, UniCredit has alleged that Luna Contreras and Peredo visit and own a home in Arizona and Luna Contreras was the President, Director, and registered corporate agent of Zummit, which operates in Arizona. (Doc. 66 at 18.) Although Luna Contreras and Peredo have submitted affidavits stating they are not currently Arizona residents, the full scope of their contacts with the state during the relevant period is unclear. Accordingly,

1    jurisdictional discovery is appropriate here and UniCredit's request is granted.

2        **C.    Subject Matter Jurisdiction**

3        A Rule 12(b)(1) motion like IyAC's here "allows litigants to seek the dismissal of

4    an action from federal court for lack of subject matter jurisdiction." *Kinlichee v. United*

5    *States*, 929 F. Supp. 2d 951, 954 (D. Ariz. 2013) (quoting *Tosco Corp. v. Comtys. for a*

6    *Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001)). "When the motion to dismiss attacks the

7    allegations of the complaint as insufficient to confer subject matter jurisdiction, all

8    allegations of material fact are taken as true and construed in the light most favorable to

9    the nonmoving party." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006).

10    "A plaintiff has the burden of proving that jurisdiction does in fact exist." *Id.*

11        9 U.S.C. § 203 grants the court original jurisdiction over "action[s] or proceeding[s]

12    falling under" the United Nations Convention on the Recognition and Enforcement of

13    Foreign Arbitral Awards (the "Convention"), as here (*see* Doc. 29 at 21). 9 U.S.C. § 203.

14    Under the Ninth Circuit's admittedly broad reading of this statute, federal courts have

15    original jurisdiction over an action or proceeding if (1) "there is an underlying arbitration

16    that falls under the Convention," and (2) "the action or proceeding relates to that arbitration

17    agreement or award." *Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1138 (9th

18    Cir. 2022). An action "relates to" an arbitration proceeding when the arbitration "'could

19    *conceivably* affect the outcome of the plaintiff's case.'" *Id.* (quoting *Infuturia Global Ltd.*

20    *v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011)). And although these

21    standards are broad, they are "not limitless." *See Cerner Middle E. Ltd. v. Belbadi*

22    *Enterprises LLC*, 939 F.3d 1009, 1016 (9th Cir. 2019).

23        As a party to the arbitration proceeding, IyAC argues the court does not have subject

24    matter jurisdiction only because it does not have personal jurisdiction. (Doc. 55 at 6.) It

25    otherwise concedes this court's jurisdiction to hear the count requesting confirmation of

26    that award. Because the court does have personal jurisdiction over IyAC and accordingly

27    subject matter jurisdiction over the arbitration count, the key question is therefore whether

28

1    the court has subject matter jurisdiction over the non-arbitration claims.

2        **D.    Supplemental Jurisdiction**

3        UniCredit asks the court to exercise supplemental jurisdiction over its fraud and

4    fraudulent transfer claims. (Doc. 51 at 9.) A court may exercise jurisdiction over all other

5    claims "that are so related to claims in the action within such original jurisdiction that they

6    form part of the same case or controversy" but may decline to exercise such jurisdiction if

7    "the claim substantially predominates over the claim or claims over which the district court

8    has original jurisdiction." 28 U.S.C. §§ 1367(a), (c). A claim does not "substantially

9    predominate[]" over another if it "share[s] a common nucleus of operative facts." *Mincy v.*

10   *Staff Leasing, L.P.*, 100 F. Supp. 2d 1050, 1053 (D. Ariz. 2000).

11       UniCredit argues its fraud claims "arise out of the same transaction, involve the

12   same parties, and arise from the same project" as the arbitration award. (Doc. 51 at 10.)

13   The court agrees. UniCredit's fraud claims arise out of the Credit Agreement, the

14   performance and alleged failure of the parties to perform under the Credit Agreement, and

15   disputes regarding the Zummit plastics equipment. The parties' arbitration claims arise out

16   of these same facts. (Doc. 1 at 64, 110.) And even if, as defendants argue, an arbitration

17   confirmation "is intended to be a 'summary proceeding'" that does not "involve complex

18   factual determinations[,]'" (Doc. 58 at 4 (quoting *Castro v. Tri Marine Fish Co. LLC*, 921

19   F.3d 766 (9th Cir. 2019)), that does not preclude the claims from arising out of a common

20   factual nucleus. Accordingly, the court exercises its supplemental jurisdiction over

21   UniCredit's state law claims and must address whether they are sufficiently pleaded.

22   **III.    Failure to State a Claim**

23       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

24   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

25   556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

26   (internal citations omitted)). This is not a "probability requirement," but a requirement that

27   the factual allegations show "more than a sheer possibility that a defendant has acted

28   unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id*. at 663–64.

### A.     Fraud

UniCredit alleges one non-stayed count of common law fraud against IyAC, Peredo Luna, and Luna Contreras. The complaint identifies six false statements or omissions as the basis for this count: (1) IyAC was "the 100% owner of Zummit"; (2) the financial statements of Inmobiliaria y Arrendadora Grupo were those of IyAC; (3) IyAC was not subject to "two pending litigation claims . . . for a large amount of money," "certain mortgages," and "contingent liabilities of $5 million and $30 million" "encumber[ed] IyAC property" (4) IyAC had not entered any material contracts that required disclosure, specifically the JVA with Zummit and the PPA with Empaques; (5) IyAC intended to repay financing from UniCredit; and (6) the arbitration claims brought against UniCredit were for the purpose of "obtaining the demanded 'damages'" rather than "for the purpose of defrauding" UniCredit. (Doc. 29 at 10, 22–24, 26–27.) UniCredit alleges these misrepresentations or omissions induced it to enter into the Credit Agreement and issue Facility A. (Doc. 29 at 22.)

Defendants argue the fraud claim is barred by the statute of limitations and inadequately pleaded. (Doc. 37 at 7.) Although the claim may not be barred by the statute of limitations, it is not adequately pleaded.

### 1.  Statute of Limitations

The statute of limitations period for fraud is three years and begins to run once a plaintiff has "knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Orbis Glob. Equity Fund Ltd. v. NortonLifelock Inc*., No. CV-21-01995-PHX-JJT, 2023 WL 1800963, at *8 (D. Ariz. Feb. 7, 2023) (quoting *Coronado Dev. Corp. v. Superior Ct*., 678 P.2d 535, 537 (Ariz. Ct. App. 1984)). UniCredit filed its initial complaint on September 21, 2023. (Doc. 1.) Defendants argue UniCredit

should have discovered the alleged fraud earlier because several of the statements at issue were publicly available before 2019 and UniCredit learned of others that year when the arbitration was filed. (Doc. 37 at 7–8, 10, 12.) UniCredit responds that it reasonably trusted the misrepresentations both because banks "assume a basic level of honesty" and because the falsity of certain statements could only be appreciated in context after it attempted to serve the arbitration award on an empty facility in June 2021. (Doc. 51 at 11–12.)

Neither side provides any case law to support when a party in UniCredit's position should have reasonably become suspicious of fraud. But "[g]enerally, the timeliness of a claim depends on matters outside the pleadings and is not 'amenable to resolution on a Rule 12(b)(6) motion.'" *Alger Dynamic Opportunities Fund v. Acadia Pharms. Inc.*, No. 24-CV-451-WQH-MSB, 2024 WL 4647297, at *18 (S.D. Cal. Oct. 31, 2024) (quoting *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998)). Accordingly, a defendant seeking dismissal based on an affirmative statute-of-limitations defense must show "it is 'beyond doubt' that the plaintiff can prove no set of facts that would establish the timeliness of his or her claims." *Orbis*, No. CV-21-01995-PHX-JJT, 2023 WL 1800963, at *3 (D. Ariz. Feb. 7, 2023) (quoting *Hernandez*, 138 F.3d at 402).

Defendants have not met this standard. UniCredit has alleged facts showing at least three banks lent comparable sums to Peredo Luna or entities he controlled that later went bankrupt or disappeared without providing recovery. (Doc. 29 at 19–21.) They have not explained why UniCredit's diligence regarding IyAC and Zummit's financial statements fell below what was expected from a comparable bank in its position.

## 2. Adequacy of Pleading

To state a claim for common law fraud, the complaint must allege "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (noting "Rule 9(b)'s particularity requirement applies to state-law causes of action"). Under this standard, UniCredit must identify the "who, what, when, where, and how of the misconduct charged." *Id.* at 1106. In Arizona, this requires that UniCredit plead the nine elements of fraud: "(1) a

representation; (2) its falsity; (3) its materiality;" the speaker's (4) knowledge of its falsity; (5) intent that it be acted upon as it was reasonably expected; the hearer's (6) ignorance of its falsity; (7) reliance on its truth; (8) right to rely on it; and (9) consequent and proximate injury. *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033–34 (Ariz. Ct. App. 2010). "'[F]ailure to [plead] any one of [these elements] is fatal to the cause of action.'" *Tavilla v. Cephalon, Inc*., 870 F. Supp. 2d 759 (D. Ariz. 2012) (*Fridenmaker v. Valley Nat. Bank of Arizona*, 534 P.2d 1064, 1068 (Ariz. App. Ct. 1975)).

Defendants argue UniCredit improperly relies on group pleading, failing to differentiate each defendant's alleged participation in the fraud. (Doc. 37 at 8.) The court agrees. Although a complaint need not identify each defendant's false statements, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together," and instead "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . [to] inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

Each of UniCredit's allegations suffers from this same grouping problem. For instance, UniCredit argues defendants misrepresented "that IyAC was the 100% owner of Zummit when, in fact, IyAC was not the 100% owner of Zummit," in part by transmitting "organization charts (at least five in total) to [UniCredit] showing that 'Inmobiliaria y Arrendadora Grupo' . . . was the 100% owner of Zummit." (Doc. 29 at 22.) UniCredit's only specific allegations are as to the individual defendants: that Peredo Luna "provided" it with an organizational chart showing IyAG as the owner of Zummit and falsely replied IyAG was the "dba" for IyAC when UniCredit when asked; and that Luna Contreras signed and dated the organizational chart. (Doc. 29 at 8–9.) In another example, UniCredit claims defendants fraudulently concealed the existence of the JVA and the PPA because doing so "would have deterred Plaintiff from entering the Credit Agreement." (Doc. 29 at 24–25.) But UniCredit again relies on group pleading without explaining the roles of each defendant, and does not allege any defendant's knowledge of or duty to disclose the existence of the JVA and PPA, or whether any defendant "intentionally prevented Plaintiff

from acquiring information about the JVA and PPA." (Doc. 37 at 11.) In short, UniCredit has not pleaded each defendant's participation in the fraud with the required particularity.

Group pleading aside, UniCredit's fraud allegations suffer from additional deficiencies. In general, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009). This standard required UniCredit to plead in its complaint—rather than ultimately explaining in a footnote in its response to a motion to dismiss (Doc. 51 at 14 n.2)—why Zummit's ownership was material to it. Similarly, UniCredit failed to allege the "who, what, when, where, and how of the misconduct charged" as it relates to IyAC's 2015, 2016 and 2017 financial statements, *see Vess*, 317 F.3d at 1106, including when the statements were transmitted, the identity of the relevant mortgages and pending litigation claims, and in what way the financial statements understated expenses and liabilities while overstating profit and book value. UniCredit also fails to allege any facts showing why these omissions were material and that they were made with the intent to induce UniCredit into entering the Credit Agreement, instead relying on conclusory statements in support. (Doc. 29 at 23.)

Unicredit's allegations concerning the concealment of the JVA and PPA, the conspiracy to defraud, and the bad-faith arbitration claim are similarly inadequate. As to the JVA and PPA, UniCredit does not explain *why* any defendants were required to disclose the JVA and PPA—especially where the PPA was finalized after the Credit Agreement. (Doc. 29 at 12–13)—or alternatively that defendants intentionally prevented it from acquiring material information as fraudulent concealment claims require. *Tavilla*, 870 F. Supp. 2d at 774. And finally, as to the bad-faith arbitration claim, UniCredit fails to identify which "underlying documents" IyAC relied on in starting the arbitration case, what material misrepresentation is at issue, in what way UniCredit reasonably relied upon it, or that defendants intended for UniCredit to rely on it. And although UniCredit alleges that it was harmed by IyAC's "merge[r] into Zummit" preventing it from recovering "on the award except from the other Defendants in this case" (Doc. 51 at 16), it does not explain how the underlying misrepresentation is proximately connected to its failure to recover.

1    In sum, UniCredit has not provided the requisite specific allegations to support its

2   fraud claim.[3]

3    **B. Fraudulent Transfer**

4    UniCredit claims Zummit, Peredo Luna, and Luna Contreras fraudulently

5   transferred IyAC's "assets, including but not limited to the SML equipment, to Zummit"

6   in violation of the Arizona Uniform Fraudulent Transfer Act. (Doc. 29 at 30.)

7    Claims brought under A.R.S. §§ 44-1004 and 44-1005 are subject to a four-year

8   statute of limitations period starting from the date "the transfer was made or the obligation

9   was incurred" or within one year after "the fraudulent nature of the transfer or obligation

10   was or through the exercise of reasonable diligence could have been discovered by the

11   claimant." A.R.S. § 44-1009.

12    The only transfer UniCredit identifies is that of the SML Equipment, which was

13   delivered to Zummit in 2018. (Doc. 29 at 5, 30.) And UniCredit argues that it first had

14   "reason to suspect that it might have been the victim of a fraud" in June 2021. (Doc. 29

15   at 18.) Accepting that UniCredit had reason to suspect fraud in June 2021, its fraudulent

16   transfer claim filed in September 2023 is nonetheless time-barred.

17    Accordingly,

18    **IT IS ORDERED** the Motions to Dismiss (Doc. 37, 54, 55) are **GRANTED IN**

19   **PART and DENIED IN PART**. Defendants Luna Contreras and Peredo are **DISMISSED**

20   **WITHOUT PREJUDICE**, the fraud claim is **DISMISSED WITH LEAVE TO**

21   **AMEND**, and the fraudulent transfer claim is **DISMISSED WITHOUT LEAVE TO**

22   **AMEND**.

23    **IT IS FURTHER ORDERED** Unicredit is permitted to take jurisdictional

24   discovery. All jurisdictional discovery must be completed within 45 days of this order.

25   /

26   /

27

28   _____

[3] UniCredit also alleges a conspiracy (Doc. 29 at 26) but it is not clear why it did so. To the extent the alleged conspiracy involves the same misrepresentations discussed above, these statements are inadequately pleaded for the same reasons.

**IT IS FURTHER ORDERED** Unicredit shall file its amended complaint, including additional fraud allegations and factual allegations establishing jurisdiction over Luna Contreras and Peredo, no later than **60 days** from the date of this order. If no amended complaint is filed, IyAC shall file its answer to the current complaint no later than fourteen days after the deadline for amending the complaint.

Dated this 16th day of December, 2024.

Honorable Krissa M. Lanham
United States District Judge